# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| S. BLAKE MURCHISON and WILLIS SHAW, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | C.A. No. 09-00020-SLR |
| HARRAH'S ENTERTAINMENT, INC., HARRAH'S OPERATING COMPANY, INC., CHARLES L. ATWOOD, JEFFREY BENJAMIN, DAVID BONDERMAN, ANTHONY CIVALE, JONATHAN COSLET, KELVIN DAVIS, JEANNE P. JACKSON, GARY W. LOVEMAN, KARL PETERSON, ERIC PRESS, MARC ROWAN, LYNN C. SWANN, and CHRISTOPHER J. WILLIAMS, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPENING BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:
James E. Brandt
Joseph J. Frank
Charles J.G. Mazer
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, New York 10022
(212) 906-1200

Dated: February 23, 2009

Gregory P. Williams (# 2168)
williams@rlf.com
Thomas Beck (# 2086)
beck@rlf.com
Kelly E. Farnan (# 4395)
farnan@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700 (main)

Attorneys for Defendants Harrah's
Entertainment, Inc., Harrah's Operating Co., Inc.,
Charles L. Atwood, Jeffrey Benjamin, David
Bonderman, Anthony Civale, Jonathan Coslet,
Kelvin Davis, Jeanne P. Jackson, Gary W.
Loveman, Karl Peterson, Eric Press, Marc
Rowan, Lynn C. Swann, and Christopher J.
Williams

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT .....................................................................................1

FACTUAL BACKGROUND ..........................................................................................5

ARGUMENT ...............................................................................................................10

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION............................10

      A.      Plaintiffs Fail to Allege an Adequate Basis for Federal Question Jurisdiction....10

            1.      The All Shares/Best Price Rule of the Williams Act Does Not Apply to Debt Securities.................................................................................10

            2.      The Trust Indenture Act Does Not Apply To Plaintiffs' Claims Because Harrah's Still is Obligated to Pay Plaintiffs the Exact Same Principal and Interest.................................................................................11

            3.      Equitable Subordination is an Inapplicable Bankruptcy Remedy That Requires Allegations of Insolvency.............................................12

      B.      Plaintiffs Fail to Allege an Adequate Basis for Diversity Jurisdiction..............14

      C.      This Court Lacks Supplemental Jurisdiction.............................................15

II.      PLAINTIFFS LACK STANDING.............................................................16

      A.      Plaintiffs Fail to Satisfy the Indentures' Prerequisites to Suit......................16

      B.      Plaintiffs Cannot Bring Claims Under Contracts to Which They Are Not Parties.................................................................................17

III.      PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE INDENTURES.................................................................................20

      A.      Indentures Are Interpreted Narrowly – That Which is Not Expressly Prohibited is Permitted.................................................................................20

      B.      The Indentures Do Not Prohibit Offers Limited to Eligible Investors Under Rule 144A and Regulation .................................................................................21

      C.      Plaintiffs Fail to Allege Any Insolvency Default.....................................22

i

D.    The Indentures Expressly Permit Harrah's To Issue New Secured
Indebtedness...................................................................................23

        1.    The Exchange Offer Created Permitted Liens as Allowed By the
Subordinated Notes Indentures.................................................23

        2.    The Exchange Offer Issued New Secured Debt At Least Equal in Seniority
to the Prior Debt and as Allowed By the Senior Notes Indentures.........24

        3.    The Exchange Offer Resulted in New Secured Dent of Less Than $1.1
Billion as Allowed By the Toggle Notes Indenture...........................26

IV.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE HARRAH'S BOARD
MEMBERS.............................................................................................27

CONCLUSION....................................................................................................28

# TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*9281 Shore Rd. Owners Corp. v. Seminole Realty Corp.,*
187 B.R. 837 (E.D.N.Y. 1995) ...............................................................13

*Acacia Nat'l Life Ins. Co. v. Kay Jewelers, Inc.,*
203 A.D.2d 40 (N.Y. App. Div. 1994) ......................................................23

*Akerman v. Oryx Commc'ns, Inc.,*
609 F. Supp. 363 (S.D.N.Y. 1984) ..........................................................19

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.,*
No. 04 Civ. 10014, 2005 WL 1950116 (S.D.N.Y. Aug. 12, 2005) ............21

*Bank of N.Y. v. Battery Park City Auth.,*
675 N.Y.S.2d 860 (N.Y.App. Div. 1998) ...................................................17

*Bank of N.Y. Mellon v. Realogy Corp.,*
No. Civ. A. 4200, 2008 WL 5259732 (Del. Ch. Dec. 18, 2008) ...............21

*Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC,*
No. 1081, 2006 WL 4762843 (Del. Ch. Mar. 28, 2006).............................28

*Brady v. UBS Fin. Servs., Inc.,*
538 F.3d 1319 (10th Cir. 2008) ................................................................12

*Castillo v. Tyson,*
268 A.D.2d 336 (N.Y. App. Div. 2000) ....................................................18

*Click Corp. v. Redco Foods, Inc.,*
424 F. Supp. 2d 753 (D.N.J. 2006).............................................................21

*Coastal Group, Inc. v. Westholme Pr's,*
No. Civ. A. 94-3010, 1996 WL 33545605 (D.N.J. Oct. 3, 1996) ...............12

*Duruaku v. BB&T Bank,*
No. 05-5285, 2006 WL 1805887 (D.N.J. June 29, 2006)............................14

*E.H.I. of Fla., Inc. v. Ins. Co. of N. Am.*
652 F.2d 310 (3d Cir. 1981)......................................................................10

*Elliott Assoc's, L.P. v. Bio-Response, Inc.,*
Civ. A. No. 10624, 1989 WL 55070 (Del. Ch. May 23, 1989) ..................22

iii

*Erickson v. Wheatley Ventures, Inc.*,
No. C-96-2934, 1997 U.S. Dist. LEXIS 4640 (N.D. Cal. Mar. 3, 1997)......................................11

*Feder v. Union Carbide Corp.*,
141 A.D.2d 799 (N.Y. App. Div. 1988) ........................................................................17

*Gagliardi v. Kratzenberg*,
188 F. App'x. 86 (3d Cir. 2006) ................................................................................18

*Glenn v. Hayman*,
No. 07-112, 2007 WL 894213 (D.N.J. Mar. 21, 2007) ....................................................18

*In re Epic Capital Corp.*,
307 B.R. 767 (D. Del. 2004).....................................................................................13

*In re Hechinger Inv. Co. of Del.*,
274 B.R. 71 (D. Del. 2002)...................................................................................4, 27

*In re Loral Space & Commc'ns Consol. Litig.*,
Nos. 2808-VCS, 3022-VCS 2008, WL 4293781 (Del. Ch. Sept. 19, 2008) ...........................3, 21

*In re RAIT Fin. Trust Sec. Litig.*,
2008 WL 5378164 (E.D. Pa. Dec. 22, 2008) ...........................................................18, 19

*In re SubMicron Sys. Corp.*,
291 B.R. 314 (D. Del. 2003).....................................................................................13

*In re Winstar Commc'ns, Inc.*,
Civ. A. No. 04-928, 2004 WL 2713101 (D. Del. Nov. 16, 2004.........................................13

*Jackson v. Rohm & Haas Co.*,
No. 06-1540, 2007 WL 579662 (3d Cir. Feb. 26, 2007) .............................................15, 16

*Kauffman v. Dreyfus Fund, Inc.*,
434 F.2d 727 (3d Cir. 1970), *cert. denied,* 401 U.S. 974 (1971)......................................19

*Klein v. Gen. Nutrition Cos.*,
186 F.3d 338 (3d Cir. 1999).....................................................................................18

*Lange v. Citibank, N.A.*,
No. Civ. A. 19245, 2002 WL 2005728 (Del. Ch. Aug. 13, 2002)......................................28

*LaSalle Nat'l. Bank v. Perelman*,
141 F. Supp. 2d 451 (D. Del. 2001)...........................................................................27

iv

*Lorenz v. CSX Corp.*,
1 F.3d 1406 (3d Cir. 1993)..................................................................................3, 20, 21

*Magee v. Moose*,
Civ. A. No. 06-02832, 2007 U.S. Dist. LEXIS 37991 (E.D. Pa. May 24, 2007) ..........................15

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
859 F. Supp. 743 (S.D.N.Y. 1994), *rev'd in part on other grounds*,
65 F.3d 1044 (2d Cir. 1995)..................................................................................17

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
930 A.2d 92, 94 (Del. 2007) ..................................................................................13

*Oran v. Stafford*,
226 F.3d 275, 289 (3d Cir. 2000) ..................................................................................25

*Peak Pr's, LP v. Republic Bank*,
191 F. App'x. 118 (3d Cir. 2006) ..................................................................................22

*Pile Found. Constr. Co. v. Berger, Lehman Assocs.*,
253 A.D.2d 484 (N.Y. App. Div. 1998) ..................................................................................18

*Prod. Res. Group, LLC v. NCT Group, Inc.*,
863 A.2d 772 (Del. Ch. 2004)..................................................................................4, 27

*Schultz v. Cally*,
528 F.2d 470 (3d Cir. 1975)..................................................................................15

*Sloan Oversees Fund, Ltd. V. Sapiens Int'l Corp., N.V.*,
941 F. Supp. 1369, 1376-7 (S.D.N.Y. 1996) ..................................................................................21

*Storino v. Borough of Point Pleasant Beach*,
322 F.3d 293, 295 (3d Cir. 2003) ..................................................................................16

*TMJ Implants, Inc. v. Aetna, Inc.*,
498 F.2d 1175 (10th Cir. 2007) ..................................................................................6

*United Mine Workers v. Gibbs*,
383 U.S. 715, 725 (1966) ..................................................................................3, 16

*UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*,
793 F. Supp. 448 (S.D.N.Y. 1992) ..................................................................................11, 12

*Victor v. Riklis*,
91 Civ. 2897, 1992 U.S. Dist. LEXIS 7025 (S.D.N.Y. May 15, 1992)..........................................17

RLF1-3370940-1

*Winer Family Trust v. Queen,*
503 F.3d 319 (3d Cir. 2007) ............................................................................6

*Weiner v. Bank of King of Prussia,*
358 F. Supp. 684 (E.D. Pa. 1973) ...................................................................19

**RULES AND STATUTES**

15 U.S.C. § 777ppp(b) ....................................................................................11

28 U.S.C. § 1332............................................................................................2, 14

28 U.S.C. § 1367(c)(3).......................................................................................15

Fed. R. Civ. P. 12 ...............................................................................................1

**OTHER AUTHORITIES**

1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,*
§ 1:320 (L. Ed. 2008)....................................................................................3, 15

RLF1-3370940-1

Defendants Harrah's Entertainment, Inc., Harrah's Operating Company, Inc. (collectively, "Harrah's" or the "Company"), Charles L. Atwood, Jeffrey Benjamin, David Bonderman, Anthony Civale, Jonathan Coslet, Kelvin Davis, Jeanne P. Jackson, Gary W. Loveman, Karl Peterson, Eric Press, Marc Rowan, Lynn C. Swann, and Christopher J. Williams (collectively the "Individual Defendants") respectfully submit this opening brief in support of their motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The relationship between a bondholder and a company is one of contract. Nothing in Harrah's contracts with its bondholders (the contract between a bondholder and a company is called an indenture) warrants the present suit and plaintiffs' claims should be dismissed.

On December 24, 2008, Harrah's closed a debt offering by which $2.25 billion in existing debt ("Prior Debt" or "Prior Bonds") was exchanged for $1.05 billion in new debt ("New Debt" or "New Bonds") and $290 million in cash (collectively, the "Exchange Offer"). Harrah's Exchange Offer was open to all investors who qualified under Regulation S and Rule 144A of the Securities Act (collectively, "Eligible Investors") and was allowed by express exceptions to the terms of the various indentures controlling Harrah's Prior Debt.

Plaintiffs S. Blake Murchison ("Murchison") and Willis Shaw ("Shaw") are holders of two of the ten classes of Harrah's Prior Debt. They seek damages on behalf of a purported class of investors from all ten classes – investors who did not participate in the Exchange Offer because they did not qualify for participation under Rule 144A or Regulation S. In support, plaintiffs allege breach of the relevant indentures (Count I). They also allege

violations of a hodgepodge of federal laws – the Williams Act (Count II), the Trust Indenture Act (Count III), and the bankruptcy remedy of Equitable Subordination (Count IV). Finally, in Count V – "Liability of Board Defendants" – plaintiffs sue each member of the Harrah's board without a single allegation of individual misconduct and without even a generalized allegation of duty or breach.

This Court should now dismiss plaintiffs' complaint for four reasons:

First, this Court lacks subject matter jurisdiction. Although plaintiffs go to great lengths to try and stay in federal court, their allegations fall short of either federal question or diversity jurisdiction. Of plaintiffs' federal claims, the Williams Act (Count II) applies only to equity offerings, whereas the Exchange Offer involved only debt. The Trust Indenture Act (Count III) does not apply to plaintiffs' claims unless: (a) a bondholder's right to principal or interest has been impaired (*e.g.*, through changing the indenture), and (b) the issuer has failed to pay interest or principal as originally agreed. Here, neither is the case – the plaintiffs' rights to principal and interest are exactly the same after the Exchange Offer as before, Harrah's has never failed to pay plaintiffs anything and, plaintiffs do not plead otherwise. Equitable Subordination (Count IV) is a bankruptcy remedy available against other creditors only, among other things, if a debtor is insolvent. Here, Harrah's is not in bankruptcy and plaintiffs are careful not to allege (because they cannot) that Harrah's is insolvent. Finally, plaintiffs' kitchen sink invocation of this Court's diversity jurisdiction also fails. For a class action, 28 U.S.C. § 1332(d)(2)(A) requires "minimal diversity" – an allegation of the defendants' citizenship, an allegation of *at least one* class member's citizenship, and diversity between the defendants and at least one class member. Here, plaintiffs fail to allege the citizenship of any particular class member (presumably because Murchison and Shaw are not diverse compared to the defendants) and

2

instead generally allege without support that "members of the Class of Plaintiffs are citizens of states different from Defendants." (Compl. ¶ 25.) Yet, such general and unspecified allegations of citizenship do not suffice for diversity jurisdiction. *See, e.g.*, 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1:320 (L. Ed. 2008). Plaintiffs' attempts to invoke this Court's supplemental jurisdiction (Compl. ¶ 26) similarly fail – if a court lacks either federal question or diversity jurisdiction from the outset (as opposed to, for example, after federal causes of action are dismissed for failure to state a claim), then supplemental jurisdiction cannot attach. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that plaintiff's federal claims "must have substance sufficient to confer subject matter jurisdiction on the court" in order for the court later to exercise supplemental jurisdiction). Accordingly, this Court should dismiss plaintiffs' complaint for lack of subject matter jurisdiction.

Second, plaintiffs lack standing to sue for breach of the relevant indentures because: (a) plaintiffs have not complied with the indentures' express "no action" prerequisites to standing to sue, and (b) plaintiffs hold only two of the ten classes of Harrah's bonds involved and thus cannot bring claims under the indentures to which they are not parties. Accordingly, this Court should dismiss plaintiffs' complaint for lack of standing.

Third, plaintiffs fail to state a claim for breach of any of the relevant indentures. Indentures are contracts that expressly limit the rights of bond issuers. Indentures are interpreted narrowly and any action that is not expressly prohibited is permitted. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1417 (3d Cir. 1993) (holding that "a corporation is under no duty to act for the benefit of its debenture holders, or to refrain from action which dilutes their interest, except as provided in the indenture."); *In re Loral Space & Comm'ns Consol. Litig.*, Nos. 2808-VCS, 3022-VCS, 2008 WL 4293781, at *35 (Del. Ch. Sept. 19, 2008) ("Indentures are to be read strictly and to the

3

extent they do not expressly restrict the rights of the issuer, the issuer is left with the freedom to act, subject only to the [] positive law.") (footnote omitted).

Here, nothing in the relevant indentures prohibits either a debt exchange offer or limiting that offer to Qualified Institutional Buyers ("QIBs") and certain non-U.S. investors as required by Rule 144A and Regulation S.[1]  Plaintiffs' claims for breach, therefore, fail as a general matter.  More particularly, however, plaintiffs allege that granting security interests for the New Bonds violates the terms of the indentures under which the Prior Bonds were issued (the "Prior Indentures").  Yet, here too plaintiffs fail to state a claim because the Prior Indentures contain exceptions that expressly allow the granting of liens in favor of the New Bonds.  Accordingly, this Court should dismiss Count I of plaintiffs' complaint for failure to state a claim upon which relief can be granted.

Fourth, plaintiffs fail to state a valid claim against any of the Harrah's directors.  None of the individual Harrah's directors is a party to any of the relevant indentures.  Further, Harrah's relationship with its bondholders is one of contract rather than one of fiduciary duty.  *In re Hechinger Inv. Co. of Del.*, 274 B.R. 71, 89 (D. Del. 2002) (holding that bondholders have only contractual rights in the ordinary course); *Prod. Res. Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 787 (Del. Ch. 2004) (holding that bondholders are not owed any fiduciary duties).  Finally, the relevant indentures expressly exempt any "past, present or future" Harrah's "director" from any bondholder's claim.

Notwithstanding these provisions, plaintiffs nonetheless tack on a Count V suing each of the Harrah's directors.  Totaling five paragraphs, plaintiffs make no individual

---

[1]  Indeed, limiting participation to holders who qualify as QIBs under Rule 144A is standard practice for debt exchange offers.

allegations against the directors whatsoever.[2]  Instead, plaintiffs merely allege that: (1) the "Board Defendants participated in and directed" the Exchange Offer (Compl. ¶ 95); (2) the Exchange Offer has "caused harm to Plaintiffs" (Compl. ¶ 96); (3) the "Board Defendants are liable for that harm to Plaintiffs" (Compl. ¶ 97); and (4) "As a result of that harm, Plaintiffs have suffered damages and will continue to suffer damages in the future." (Compl. ¶ 98.)

That's it.  Plaintiffs have not alleged any fiduciary duties or their breach, nor explained how board members could be liable for the Company's alleged breach of a contract or alleged statutory violations.  Plaintiffs have made no further allegations of any kind, and certainly not one that would surmount the express exculpation of directors set forth in the Prior Indentures.  Accordingly, this Court should dismiss Count V of plaintiffs' complaint for failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

The Prior Bonds and the Exchange Offer

Prior to November 2008, Harrah's Operating Company, Inc. issued ten classes of unsecured bonds: (1) 7 7/8% Senior Subordinated Notes due 2010; (2) 8 1/8% Senior Subordinated Notes due 2011, (collectively the "Senior Subordinated Notes"); (3) 5.50% Senior Notes due 2010; (4) 8.00% Series A and B Senior Notes due 2011; (5) 5.375% Senior Notes due 2013; (6) 5.625% Senior Notes due 2015; (7) 6.5% Senior Notes due 2016; (8) 5.75% Senior Notes due 2017, (collectively the "Senior Notes"); (9) 10.75% Senior Notes due 2016; and (10) 10.75%/11.5% Optional PIK Interest Senior Notes due 2018, (collectively the "Toggle Notes").

---

[2]     In the first of its five paragraphs summary (Compl. ¶ 94), Count V "incorporate[s] by reference" each of the Complaint's preceding paragraphs.  Yet, other than identifying the Individual Defendants by name (n.b., although not by citizenship), those paragraphs do not even pretend to address how plaintiffs could state a claim for individual liability.

(Compl. ¶ 50.) The Prior Bonds are each governed by an indenture agreement[3] (collectively, the "Prior Indentures").[4] (*See* Pl. Exs. A and B; Def. Ex. A (March 14, 2002 Indenture for 7 7/8% Senior Subordinated Notes due 2010); Def. Ex. B (June 25, 2004 Indenture for 5.50% Senior Notes due 2010); Def. Ex. C (May 14, 2001 Indenture for 8 1/8% Senior Subordinated Notes due 2011); Def. Ex. D (January 29, 2001 Indenture for 8.00% Series A and B Senior Notes due 2011); Def. Ex. E (December 11, 2003 Indenture for 5.375% Senior Notes due 2013); Def. Ex. F (May 27, 2005 Indenture for 5.625% Senior Notes due 2015); Def. Ex. G (February 1, 2008 Indenture for 10.75% Senior Notes due 2016 and 10.75%/11.5% Optional PIK Interest Senior Notes due 2018).)[5]

Like many companies in the current environment, Harrah's has bonds that have been trading at substantial discounts from their face value. (Compl. ¶ 44.) Accordingly, Harrah's decided to take the opportunity to lower the Company's overall debt burden by exchanging certain of its Prior Bonds for New Bonds. (Compl. ¶ 45; Def. Ex. H, November 14,

---

[3] The 10.75% Senior Notes due 2016 and 10.75%/11.5% Optional PIK Interest Senior Notes due 2018 are governed by the same indenture, referred to as the "Toggle Notes Indenture" for ease for ease of reference. (Def. Ex. G.)

[4] References in the form of "Pl. Ex.___" refer to Exhibits to the complaint filed January 12, 2009. References in the form "Def. Ex.___" refer to exhibits to the Declaration of Kelly E. Farnan, filed concurrently herewith.

[5] A district court may consider documents attached to a motion to dismiss that were not submitted with the complaint, when those "documents [are] integral to and/or were explicitly relied upon by" the complaint. *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007). This includes documents that the complaint incorporates by reference. *Id.* Although we ordinarily limit our review [on a motion to dismiss] to the allegations in the complaint, we consider documents incorporated in the complaint by reference. *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007).

Here, the complaint alleges breach of contract and the contracts at issue are the Prior Indentures. The complaint also expressly references both the Exchange Offer documentation (Compl. ¶¶ 45-55), and the indentures themselves. (Compl. ¶¶ 50, 53, 57.) As such, this Court may properly consider those documents when deciding the current motion.

6

2008 Indenture for 10.00% Second-Priority Senior Secured Notes due 2015 and 10.00% Second-Priority Senior Secured Notes due 2018.) The New Bonds were issued with lower principal amounts than the Prior Bonds, but were secured by the Company's assets rather than unsecured. (*Id.*) The Exchange Offer was open to all investors who qualified under Rule 144A or Regulation S. (*Id.*) On December 24, 2008, Harrah's closed the Exchange Offer and replaced $2.25 billion of its Prior Bonds with $1.05 billion of New Bonds, thus substantially reducing the overall debt burden of the Company. (*See* Def. Ex. I, December 22, 2008 Press Release, Harrah's Entertainment Announces Results and Expiration of Private Exchange Offer.)

The Three Types of Indentures

The Prior Bonds and their associated indentures may be grouped into three types: (1) the Senior Subordinated Notes Indentures (Nos. 1-2 above); (2) the Senior Notes Indentures (Nos. 3-8 above); and (3) the Toggle Notes Indenture (Nos. 9-10 above). For purposes of defendants' current motion, all the indentures grouped together as Senior Subordinated, Senior, or Toggle contain analogous terms.

The Senior Notes and the Toggle Notes have highest payment priority among the ten classes of debt. (Pl. Exs. A and B; Def. Ex. A, § A.2; Def. Ex. B, § A.2; Def. Ex. C, § A.2; Def. Ex. D, § A.2; Def. Ex. E, § A.2; Def. Ex. F, § A.2.) The Toggle Notes are senior debt that allow the Company under certain circumstances to increase the principal owed in lieu of paying cash interest. (Def. Ex. G, § 2.03.) The Senior Subordinated Notes' right to payment is subordinate to the Senior Notes and the Toggle Notes. (Def. Ex. A, § 12.01; Def. Ex. C, § 12.01.)

7

Limitations on Suit

Each of the Prior Indentures is governed by New York law and contains a "No Action" limitation on suit. (Pl. Ex. A, § 10.10; Pl. Ex. B, § 112; Def. Ex. A, § 1.14; Def. Ex. B, § 10.10; Def. Ex. C, § 1.14; Def. Ex. D, § 10.10; Def. Ex. E, § 10.10; Def. Ex. F, § 10.10; Def. Ex. G, § 13.09.) That No Action limitation provides that note holders may not "institute any proceeding, judicial or otherwise, with respect to this Indenture ... or for any other remedy hereunder, unless":

> (1) written notice is provided to the Trustee of a continuing Event of Default;
>
> (2) holders of not less than 25% of the principal amount of the outstanding notes make a written request that the Trustee sue;
>
> (3) the holders have made reasonable offers to indemnify the Trustee's litigation expenses; and
>
> (4) the Trustee has failed to institute proceedings within 60 days of receiving notice.

(Pl. Ex. A, § 6.7; *see also* Pl. Ex. B, § 507; Def. Ex. A, § 5.07; Def. Ex. B, § 6.7; Def. Ex. C, § 5.07; Def. Ex. D, § 6.7; Def. Ex. E, § 6.7; Def. Ex. F, § 6.7; Def. Ex. G, § 6.06.)[6] The Prior Indentures also exempt any Harrah's "director" from any claim based on or "in respect of" the notes or indentures. (Pl. Ex. A, § 10.8; *see also* Pl. Ex. B, § 1401; Def. Ex. A, § 1.13; Def. Ex. B, § 10.8; Def. Ex. C, § 1.13; Def. Ex. D, § 10.8; Def. Ex. E, § 10.8; Def. Ex. F, § 10.8; Def. Ex. G, § 13.10.)

---

[6]   All of the Prior Indentures contain prerequisites to suit and director immunity provisions. Those provisions do not materially differ for the purposes of the present motion. (*Compare, e.g.,* Def. Ex. G, § 6.06(a)(iv) (allowing suit if after complying with the indenture's other substantive requirements, the trustee fails to act within 60 days); Def. Ex. C, § 5.07(d) (allowing suit if after complying with the indenture's other substantive requirements, the trustee fails to act within 15 days).)

<u>Provisions Allowing Harrah's to Issue New Secured Debt</u>

Although plaintiffs allege that the Exchange Offer violated the Prior Indentures by issuing secured debt (Compl. ¶ 71), the Prior Indentures each contain provisions that expressly allow the granting of liens in favor of New Debt.

The Subordinated Notes Indentures allow the incurrence of "Permitted Liens," defined to include any "[l]iens securing senior debt," such as the senior debt issued as part of the Exchange Offer. (Def. Ex. A, §§ 1.01, 10.07; Def. Ex. C, §§ 1.01, 10.07.) The Senior Notes Indentures have two relevant exceptions. First, they allow incurrence of liens for debt used "to retire Funded Debt." (Pl. Ex. A, § 4.7; Pl. Ex. B, § 1007 of the officers' certificate; Def. Ex. B, § 4.7; Def. Ex. D, § 4.7; Def. Ex. E, § 4.7; Def. Ex. F, § 4.7.) "Funded Debt" is defined to include "all Indebtedness of the Company which ... ranks at least pari passu [equal in seniority] with the notes."[7] Second, the Senior Notes Indentures separately allow Harrah's to issue additional secured debt "in an aggregate principal amount which . . . does not at any one time exceed 15% of Consolidated Net Tangible Assets of the Company and its consolidated Subsidiaries." (Pl. Ex. A, § 4.7; Pl. Ex. B, § 1007; Def. Ex B, § 4.7; Def. Ex D, § 4.7; Def. Ex F, § 4.7; Def. Ex E, § 4.7.) "Consolidated Net Tangible Assets" in turn is defined as "the total amount of assets" less current liabilities, depreciation, and amortization. (Pl. Ex. A, § 1.1; Pl. Ex. B, § 101; Def. Ex. B, § 1.1; Def. Ex. D, § 1.1; Def. Ex. F, § 1.1; Def. Ex. E, § 1.1.)

The Toggle Note's Indenture expressly allows for the "refund[ing], refinanc[ing] or defeas[ing]" of any indebtedness existing as of the issuance of the Toggle Notes, (Def. Ex. G, § 4.03(b)(xv) (citing § 4.03(b)(iii))), as long as the new, refinanced notes mature at least as late as the notes they are replacing. (*See id.* at § 4.03(xv)(1).) The Toggle Note's Indentures

---

[7]    (Pl. Ex. A, § 1.1; Pl. Ex. B, § F of the officers' certificate; Def. Ex. B, § 1.1; Def. Ex. D, § 1.1; Def. Ex. E, § 1.1; Def. Ex. F, § 1.1.)

similarly allow for the "refund[ing], refinanc[ing] or defeas[ing]" of the Toggle Notes themselves. (*Id*. at § 4.03(b)(xv), (citing § 4.03(b)(ii)).) The Toggle Notes Indenture also allows for incurrence of new debt of any sort that "when aggregated with the principal amount or liquidation preference of all other Indebtedness . . . does not exceed the greater of $1,100 million and 5% of Total Assets at the time of Incurrence." (*Id*. at § 4.03(b)(xii).) The Toggle Notes Indenture also allows such indebtedness to be secured. (*Id*. at § 1.01 (stating that a "Permitted Lien" is one "securing Indebtedness permitted pursuant to clause … (xii) … of Section 4.03(b).").)

## ARGUMENT

## I. THIS COURT LACKS SUBJECT MATTER JURISDICTION.

Plaintiffs seek to invoke this Court's subject matter jurisdiction by alleging federal questions (Compl. ¶¶ 23-24), diversity of citizenship (Compl. ¶ 25), and supplemental jurisdiction. (Compl. ¶ 26.) Upon examination, however, plaintiffs' allegations fail to give rise to subject matter jurisdiction and this Court should dismiss the Complaint.

### A. Plaintiffs Fail to Allege an Adequate Basis for Federal Question Jurisdiction.

#### 1. The All Shares/Best Price Rule of the Williams Act does not apply to debt securities.

Plaintiffs allege that they have suffered damages from defendants' "unfair, arbitrary and discriminatory tender offers" in violation of the "All Shares/Best Price Rule" of the Williams Act. (Compl. ¶¶ 71-80.) Yet, the All Shares/Best Price Rule of the Williams Act applies only to "equity securities," not to debt securities like the bonds at issue here. *E.H.I. of Fla., Inc. v. Ins. Co. of N. Am.*, 652 F.2d 310, 313 (3d Cir. 1981) (finding that Section 14(d) of the Williams Act does not apply to long-term fixed interest rate bonds which are not required to be registered as "equity securities" under Section 12 of the 1934 Act). Bonds, of course, are not

equity securities because, like loans, they represent no ownership interest in the issuer. *Erickson v. Wheatley Ventures, Inc.*, No. C-96-2934, 1997 U.S. Dist. LEXIS 4640, at *13-14 (N.D. Cal. Mar. 3, 1997) ("Central to this definition [of equity security] is the concept of an ownership interest, to be distinguished from obligations such as notes or bonds which are not equities and represent no ownership interest.") (quotation omitted). Here, the Prior Bonds are not "equity securities" because they bear a fixed rate of interest and confer no ownership interest. (*See* Pl. Exs. A and B; Def. Exs. A, B, C, D, E, F, and G.) Accordingly, the Williams Act does not apply to Harrah's Exchange Offer, and Plaintiffs' claims should be summarily dismissed as they cannot rely on an alleged breach of it to claim subject matter jurisdiction.

> 2. **The Trust Indenture Act does not apply to plaintiffs' claims because Harrah's still is obligated to pay plaintiffs the exact same principal and interest.**

The Trust Indenture Act ("TIA") does not apply to plaintiffs' claims unless: (a) a bondholder's right to principal or interest has been impaired (*e.g.*, through changing the indenture), and (b) the issuer has failed to pay interest or principal as originally agreed. In particular, the TIA provides that:

> Notwithstanding any other provision of the indenture to be qualified, ***the right*** of any holder of indenture security ***to receive payment of the principal of and interest*** on such indenture security, ***on or after the respective due dates*** expressed in such indenture security … ***shall not be impaired*** or affected without the consent of such holder…

15 U.S.C. § 777ppp(b) (emphasis supplied). Courts routinely have interpreted the phrase "on or after the respective due dates expressed in the Security," as being "broad, unambiguous, and similarly unqualified." *UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*, 793 F. Supp. 448, 455 (S.D.N.Y. 1992) (quotation omitted). As a consequence, plaintiffs have no claim unless their

11

principal and interest are due under the terms of the Prior Indentures and Harrah's has not paid. *See id.*

In *Kinder-Care*, for example, the Southern District held that plaintiffs would be able to sue only if payments were actually due and not paid under the securities. *Id.* at 456 (holding that a plaintiff may sue under the TIA only if payments are due and unpaid under the relevant Event of Default clause). Similarly, in *Brady v. UBS Fin. Servs., Inc.*, the Tenth Circuit held that "the Trust Indenture Act . . . provides an unqualified, individual right to bring suit for the payment of principal and interest ***after the due dates for those payments***." 538 F.3d 1319, 1324 (10th Cir. 2008) (emphasis supplied).

Here, plaintiffs' rights to principal and interest are exactly the same now as they were before the Exchange Offer. They're entitled to the same money at the same time. Indeed, plaintiffs fail to allege that Harrah's has defaulted by failing to pay any principal or interest – instead alleging only that Harrah's is "***on the verge*** of [] debt default and other events of insolvency." (Compl. ¶ 1 (emphasis supplied); *see also* Compl. ¶¶ 44, 56.) Plaintiffs cannot allege that Harrah's has failed to make payments on the Prior Notes; they allege only that "there is a substantial likelihood that" Harrah's will default at some point in the future. (Compl. ¶ 83.) Yet, the TIA requires something more – an actual failure to pay principal and interest. Accordingly, the TIA simply does not apply, and plaintiffs' claims should be summarily dismissed as they cannot rely on an alleged breach of it to claim subject matter jurisdiction.

### 3. Equitable Subordination is an Inapplicable Bankruptcy Remedy That Requires Allegations of Insolvency.

Equitable subordination is a bankruptcy remedy which requires that a debtor be insolvent. *Coastal Group, Inc. v. Westholme Pr's*, Civ. A. No. 94-3010, 1996 WL 33545605, at *8 (D.N.J. Oct. 3, 1996) (holding that "Plaintiff's assertion of a cause of action for equitable

12

subordination is entirely misplaced. Equitable subordination is a *remedy*.") (emphasis supplied); *In re Winstar Commc'ns, Inc.*, Civ. A. No. 04-928, 2004 WL 2713101, at *4 (D. Del. Nov. 16, 2004) ("equitable subordination claims are purely bankruptcy-related in nature," requiring that a debtor be insolvent); *see also 9281 Shore Rd. Owners Corp. v. Seminole Realty Corp.*, 187 B.R. 837, 855 (E.D.N.Y. 1995) ("[T]he equitable subordination claim is solely a Bankruptcy Court remedy.").

Here, Harrah's is neither insolvent nor in bankruptcy. Indeed, plaintiffs themselves essentially concede these points by alleging that Harrah's, at most, is "*on the verge* of [] debt default and other events of insolvency." (Compl. ¶ 1 (emphasis supplied).) Yet, Delaware courts routinely reject any concept of such a "zone of insolvency" as a substitute for the requirement that a debtor actually be insolvent. *See, e.g., N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 94 (Del. 2007) (duties to creditor do not arise during "zone of insolvency" but rather only when corporation actually is insolvent).

Finally, in order to make out a claim of equitable subordination, plaintiffs would need to allege that the New Bond holders acted inequitably. *Id.* Such inequitable conduct must amount to: "(1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtors as a mere instrumentality or alter ego." *In re SubMicron Sys. Corp.*, 291 B.R. 314, 327-8 (D. Del. 2003); *see also In re Epic Capital Corp.*, 307 B.R. 767, 772 (D. Del. 2004) ("[T]he party seeking to apply equitable subordination bears a higher burden of proof in which he or she must show that the [claimant] engaged in egregious conduct such as fraud, spoliation or overreaching."). Here, plaintiffs have failed to allege that any holder of the New Bonds (holders that are not named in the Complaint) acted inequitably; plaintiffs make claims, if at all, only against Harrah's and its directors. (Compl. ¶¶ 88-93.)

13

At the heart of their equitable subordination claim, plaintiffs seek to take away rights from the New Bond holders – rights those holders are allowed under the very indentures that plaintiffs executed. It would be improper to extinguish the rights of absent parties without any allegations against them and without their joinder as necessary parties to this action.

Absent allegations of insolvency and claims in bankruptcy against holders of the New Bonds, the remedy of equitable subordination simply does not apply. Plaintiffs' claims, therefore, should be summarily dismissed as they cannot rely on such a federal claim of equitable subordination for subject matter jurisdiction.

B.   **Plaintiffs Fail to Allege an Adequate Basis for Diversity Jurisdiction.**

Plaintiffs allege that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Compl. ¶ 25.) For class actions, 28 U.S.C. § 1332(d)(2)(A) provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds [] $5,000,000 [] and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." Under this latter "minimal diversity" requirement, the Complaint must allege the citizenship of any plaintiff, and must allege that plaintiff's citizenship is different from the alleged citizenship of any defendant. *Duruaku v. BB&T Bank*, No. 05-5285, 2006 WL 1805887, at *5 (D.N.J. June 29, 2006) (holding that minimal diversity is not adequately alleged when citizenship of parties is not plead).

Here, plaintiffs merely allege that "members of the Class of Plaintiffs are citizens of states different from Defendants." (Compl. ¶ 25.) That's it. Plaintiffs fail to allege the citizenship of *any* of the named plaintiffs or *any* of the potential class members. Plaintiffs also conspicuously fail to allege the citizenship of any of the Individual Defendants (*n.b.*, for minimal

diversity, at least one plaintiff must be diverse from all defendants). *Duruaku*, 2006 WL 1805887, at *5.

These defects are fatal because there is no way for the Court to determine from the face of the Complaint whether diversity exists. *Magee v. Moose*, Civ. A. No. 06-02832, 2007 U.S. Dist. LEXIS 37991, at *3 (E.D. Pa. May 24, 2007) ("A basic requirement of pleading is that the jurisdiction of a federal court must appear on the face of the complaint.") (citing *Schultz v. Cally*, 528 F.2d 470, 473 (3d Cir. 1975) (complaint is "fatally defective for failure to allege the citizenship of defendant")); *see also* 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1:320 (L. Ed. 2008) ("The pleadings **must** indicate the state citizenship of the respective parties in order to maintain federal diversity jurisdiction. The following will therefore render the pleadings insufficient and result in a denial of jurisdiction: . . . failure to allege the citizenship of any of the parties." (emphasis supplied)).

Absent allegations of citizenship for both plaintiffs and defendants, plaintiffs fail to allege diversity and this Court should dismiss the Complaint for lack of subject matter jurisdiction.

## C. This Court Lacks Supplemental Jurisdiction.

If a plaintiff properly invokes a court's federal question or diversity jurisdiction, and those claims subsequently are dismissed for failure to state a claim or on other non-jurisdictional grounds, then the court may decide to decline or retain jurisdiction over the remaining state law claims under the court's supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *see Jackson v. Rohm & Haas Co.*, No. 06-1540, 2007 WL 579662, at *2-3 (3d Cir. Feb. 26, 2007). However, where (as here) the claims allegedly giving rise to a court's federal question or diversity jurisdiction should themselves be dismissed for lack of jurisdiction (rather than on other

15

grounds), then a court lacks supplemental jurisdiction as a matter of law. *Gibbs*, 383 U.S. at 725 (holding that a plaintiff's federal claims originally "must have substance sufficient to confer subject matter jurisdiction on the court" in order for the court later to exercise supplemental jurisdiction); *see also Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 295 (3d Cir. 2003) (holding that if a plaintiff fails to establish standing and a district court lacks subject matter jurisdiction over the federal claims, then "the District Court did not have supplemental jurisdiction over the [] state law claims, and thus should have dismissed those claims as well.").

Here, plaintiffs fail to allege a federal question or the required minimal diversity. As such, this Court also lacks supplemental jurisdiction and should dismiss the Complaint on that basis.[8]

## II.     **PLAINTIFFS LACK STANDING.**

Plaintiffs have failed to satisfy the pre-suit requirements to which they agreed in the Prior Indentures and are not parties to eight of the ten classes of bonds at issue. As such, plaintiffs lack standing.

### A.     **Plaintiffs Fail to Satisfy the Indentures' Prerequisites to Suit.**

According to the Prior Indentures, note holders may not "institute any proceeding, judicial or otherwise, with respect to this Indenture … or for any other remedy hereunder, unless": (a) written notice is provided to the Trustee of a continuing Event of Default, (b) holders of not less than 25% of the principal amount of the outstanding notes make a written request that

---

[8]     Even if this Court were to dismiss plaintiffs' cause of action for failure to state a claim rather than for lack of jurisdiction, this Court still should dismiss the Complaint in its entirety. In such circumstances, courts routinely decline to exercise supplemental jurisdiction and instead force plaintiffs to pursue whatever claims they have in state court. *Jackson*, 2007 WL 579662, at *2 (upholding district court's refusal to exercise supplemental jurisdiction, where the "federal claim is found to be wholly lacking in merit").

the Trustee sue, (c) the holders have made reasonable offers to indemnify the Trustee's litigation expenses, and (d) the Trustee has failed to institute proceedings within 60 days of receiving notice. (Pl. Ex. A, § 6.7; *see also* Pl. Ex. B, § 507; Def. Ex. A, § 5.07; Def. Ex. B, § 6.7; Def. Ex. C, § 5.07; Def. Ex. D, § 6.7; Def. Ex. E, § 6.7; Def. Ex. F, § 6.7; Def. Ex. G, § 6.06.) Here, plaintiffs have fulfilled none of these requirements, nor have they alleged doing so.

New York courts routinely dismiss suits where plaintiffs have not fulfilled such "no-action" requirements. *See, e.g., McMahan & Co. v. Wherehouse Entm't, Inc.*, 859 F. Supp. 743, 747-49 (S.D.N.Y. 1994) (dismissing bond holders' claims as barred by no-action clause), *rev'd in part on other grounds*, 65 F.3d 1044 (2d Cir. 1995); *Victor v. Riklis*, 91 Civ. 2897, 1992 U.S. Dist. LEXIS 7025, at *2 (S.D.N.Y. May 15, 1992) (same); *Bank of N.Y. v. Battery Park City Auth.*, 675 N.Y.S.2d 860 (N.Y. App. Div. 1998) (same); *Feder v. Union Carbide Corp.*, 141 A.D.2d 799, 800 (N.Y. App. Div. 1988) (same). For example, the no-action clause in *McMahan* is virtually identical to those contained in the Prior Indentures. The *McMahan* court interpreted such language as a "broad" type of no-action clause, explained that no-action clauses are "strictly construed," and dismissed plaintiffs' claims as a result. *McMahan & Co.*, 859 F. Supp. at 747-8 & n.5.

Having failed to comply with the Prior Indentures' no-action prerequisites to suit, plaintiffs lack standing and this Court should dismiss the Complaint as a result.

B.     **Plaintiffs Cannot Bring Claims Under Contracts to Which They Are Not Parties.**

Plaintiffs also lack standing to sue under indenture agreements to which they are not parties. Plaintiffs allege that the Exchange Offer "violated [] provisions in the respective indenture agreements for the [Prior] Notes." (Compl. ¶ 60(a).) However, plaintiffs admit that they hold notes in, respectively, only two classes of the ten classes of Prior Notes at issue –

Murchison owns "5.75% Senior Notes Due 2017," and Shaw owns "6.5% Senior Notes due 2016." (Compl. ¶¶ 29-30.)

Under New York law, a plaintiff must be a party, or a third-party beneficiary, in order to have standing to recover on a contract. *Glenn v. Hayman*, No. 07-112, 2007 WL 894213, at *10 n.15 (D.N.J. Mar. 21, 2007) ("Plaintiffs, non-parties to Defendants' contracts, have no standing to sue" for alleged breach); *Castillo v. Tyson*, 268 A.D.2d 336, 337 (N.Y. App. Div. 2000); *Pile Found. Constr. Co. v. Berger, Lehman Assocs., P.C.*, 253 A.D.2d 484, 486 (N.Y. App. Div. 1998) (when no contract existed between plaintiff and defendant, plaintiff must show it was an intended third-party beneficiary in order to recover).

In putative class actions, "[n]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (quotation omitted); *Gagliardi v. Kratzenberg,* 188 F. App'x. 86, 88 (3d Cir. 2006) (holding that "a litigant [must] assert his [or her] own legal interests rather than those of third parties") (quotation omitted).

In *In re RAIT Fin. Trust Sec. Litig.*, plaintiffs sought to bring a class action under federal securities laws based on alleged misstatements made in connection with two classes of stock issued in two different offerings. 2008 WL 5378164, at *1 (E.D. Pa. Dec. 22, 2008). Yet, because the named plaintiffs had participated in only one of the two offerings and thus held only one of the two classes of stock, the court held that the named plaintiffs lacked standing to pursue recovery, even if unnamed class members may have held the other class of stock and may have had claims. *Id.* at *3-4.

18

Here, as in *RAIT*, the named plaintiffs are not holders of all of the types of instruments at issue; indeed, the named plaintiffs are not parties to the vast majority of the indenture agreements upon which they bring claims. (Compl. ¶¶ 29-30.) While unnamed class members may have held eight of the ten types of bonds at issue, the named plaintiffs do not and therefore lack the requisite standing to bring claims on their behalf. *RAIT*, 2008 WL 5378164, at *3-4; *Klein*, 186 F.3d at 345; *see also Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970) ("[A] predicate to [a plaintiff's] right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class."), *cert. denied*, 401 U.S. 974 (1971); *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 705 (E.D. Pa. 1973) (plaintiff "may not use the procedural device of a class action to boot strap himself into standing he lacks under the express terms of the substantive law."); *Akerman v. Oryx Commc'ns, Inc.*, 609 F. Supp. 363, 377 (S.D.N.Y. 1984) ("The procedural expedient of plaintiff class certification should not be mistaken for the sort of legal relationship that confers standing on representatives to litigate the claims of individual members.") Having failed to allege that they are holders of each of the classes of bonds at issue, plaintiffs lack standing and this Court should dismiss the Complaint.[9]

---

[9] Plaintiffs may argue that their standing with respect to the other classes of bonds should be addressed at the class certification stage. Yet, the law requires that plaintiffs must, at the dismissal stage, demonstrate standing as to each of their claims. *RAIT*, 2008 WL 5378164, at *4. ("Plaintiffs insist that this Court should not address Defendants' standing argument until class certification is complete so that Plaintiffs can add to the action a named plaintiff with standing to bring Counts Four through Six. However, the first and fundamental question for a court is that of jurisdiction. If Plaintiffs do not have constitutional standing, this Court lack[s] subject matter jurisdiction to address the merits of their claims. As a result, the question of standing is properly addressed at the motion to dismiss stage, and Plaintiffs must allege the elements of standing in their complaint to avoid dismissal.") (quotations omitted).

# III. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE INDENTURES.

In Count I, plaintiffs allege Breach of the Prior Indentures. First, plaintiffs allege that the Exchange Offer violates the Prior Indentures because the Exchange Offer should not have been limited to QIBs under Rule 144A and non-U.S. holders under Regulation S. (Compl. ¶ 55 ("The Exchange Offers gave QIBs and certain non-U.S. investors located outside the United States priority ahead of previously equal bondholders, including Plaintiffs" thus "denying Plaintiffs the ability to participate in the Exchange Offers").) Second, plaintiffs allege that the Exchange Offer violates the Prior Indentures because Harrah's was in default at the time given that "there is a substantial likelihood that Harrah's will not be able to pay the Old Notes when they become due." (Compl. ¶ 71.) Third, plaintiffs allege that the Exchange Offer violates the Prior Indentures "because the Old Notes are subordinated to the New Notes" which are "secured" without extending such security "equally and ratably" to the Prior Notes. (Compl. ¶¶ 70-72.)[10] Each of plaintiffs' allegations, however, fails to state a claim under the terms of the relevant indentures.

## A. Indentures Are Interpreted Narrowly – That Which is Not Expressly Prohibited is Permitted.

Indenture agreements between bond issuers and bond holders are to be read strictly and solely as a matter of contract. *Lorenz*, 1 F.3d at 1417 (under New York law, "[t]he

---

[10]   Plaintiffs also allege that Harrah's did not "obtain the consent of Plaintiffs or other affected noteholders to the Exchange Offers" (Compl. ¶ 72), but do not allege that the Exchange Offer actually "reduce[d] the rate of or extend[ed] the time for payment of interest on the [respective] notes or reduce[d] the principal or change[d] the stated maturity of the [respective] notes" (*id.*), thus triggering the requirement to obtain consent. Plaintiffs do not allege such changes to the Prior Indentures for the simple reason that the Exchange Offer actually made no changes of any kind to the Prior Indentures. Absent an allegation to the contrary, it is undisputed that plaintiffs' consent to the Exchange Offer is irrelevant as a matter of law.

20

relationship between a corporation and its debenture holders is contractual in nature. . . . [and] a corporation is under no duty to act for the benefit of its debenture holders, or to refrain from action which dilutes their interest, except as provided in the indenture."); *see also In re Loral Space & Comm'ns Inc. Consol. Litig.*, 2008 WL 4293781, at \*35 ("Indentures are to be read strictly and to the extent they do not expressly restrict the rights of the issuer, the issuer is left with the freedom to act, subject only to the [] positive law."); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*, No. 04 Civ. 10014, 2005 WL 1950116, at \*4 (S.D.N.Y. Aug. 12, 2005) ("The Court interprets bond indentures pursuant to contract law."). All other actions not expressly prohibited by the indenture agreements or by separate law, therefore, are allowed. *In re Loral Space & Comm'ns Inc. Consol. Litig.*, 2008 WL 4293781, at \*35.

B. **The Indentures Do Not Prohibit Offers Limited to Eligible Investors Under Rule 144A and Regulation S.**

Plaintiffs do not allege (nor can they) that the terms of the Prior Indentures prevent debt offerings limited to QIBs under Rule 144A and to certain non-U.S. persons under Regulation S.[11] Such offerings therefore are permitted to the extent that they do not separately violate law. *In re Loral Space & Comm'ns Inc. Consol. Litig.*, 2008 WL 4293781, at \*35; *see also Lorenz*, 1 F.3d at 1417. Far from violating law, Rule 144A and Regulation S offerings are commonly used and routinely approved by courts. *See, e.g. Bank of N.Y. Mellon v. Realogy Corp.*, No. Civ. A. 4200, 2008 WL 5259732, at \*2 n.3 (Del. Ch. Dec. 18, 2008) (noting that "[b]ecause of the nature of the refinancing indebtedness, participants must be eligible qualified institutional buyers pursuant to Rule 144A"); *Sloan Oversees Fund, Ltd. V. Sapiens Int'l Corp.,*

---

[11] This Court may interpret the Prior Indentures on a motion to dismiss. *Click Corp. v. Redco Foods, Inc.*, 424 F. Supp. 2d 753, 759 (D.N.J. 2006) (holding that when a "matter turns on [the] Court's interpretation of the contract, [it is] a matter of law that is properly considered on a Rule 12(b)(6) motion to dismiss.").

*N.V.*, 941 F. Supp. 1369, 1376-7 (S.D.N.Y. 1996) (holding a debt offering under Regulation S to be valid and potentially giving rise to Section 12(2) liability). Limiting the Exchange Offer to those participants eligible under Rule 144A and Regulation S neither breaches the terms of the Prior Indentures nor violates any applicable law. Accordingly, this Court should dismiss Count I for failure to state a claim upon which relief may be granted.

### C. Plaintiffs Fail to Allege Any Insolvency Default.

Plaintiffs allege that the Exchange Offer breached the Prior Indentures because "there is a substantial likelihood that Harrah's will not be able to pay the Old Notes when they become due." (Compl. ¶ 72.) Yet, plaintiffs misstate the terms of the relevant indentures.

The Prior Indentures provide that if Harrah's generally is not paying its debts as they become due, that would constitute an Event of Default (and thus presumably, according to plaintiffs' reasoning, prevent the Exchange Offer). (Def. Ex. A, § 5.01(f)(iv)(C); Def. Ex. B, § 6.1(e)(v); Def. Ex. C, § 5.01(f)(iv)(C); Def. Ex. D, § 6.1(f)(v); Def. Ex. E, § 6.1(e)(v); Def. Ex. F, § 6.1(e)(v).) Here, the Complaint does not allege any nonpayment of interest or principal owed to the bondholders, nor even that Harrah's generally is not paying its debts when due. Significantly, plaintiffs allege only a "substantial likelihood" that Harrah's will be unable to pay its debts in the future. (Compl. ¶ 71.)

Yet, it is axiomatic that Events of Default are measured at the time of occurrence, rather than on their prospect at some point in the future. *Peak Pr's, LP v. Republic Bank*, 191 F. App'x. 118, 123 (3d Cir. 2006) (holding that events that created high likelihood of default were insufficient to satisfy indenture's event-of-default requirement); *see also Elliott Assocs., L.P. v. Bio-Response, Inc.*, Civ. A. No. 10624, 1989 WL 55070, at *4 (Del. Ch. May 23, 1989) (noting that anticipatory breach claim under New York law "would not constitute a default under the

22

terms of the Indenture since the [defaults section] does not list anticipatory repudiation as an event of default"); *Acacia Nat'l Life Ins. Co. v. Kay Jewelers, Inc.*, 203 A.D.2d 40, 43 (N.Y. App. Div. 1994) (holding that even if issuer states intention not to comply with future obligation under indenture, this cannot constitute breach or default before events triggering obligation actually occur). Absent allegation of an insolvency-related Event of Default under the Prior Indentures, this Court should dismiss Count I for failure to state a claim upon which relief may be granted.

### D. The Indentures Expressly Permit Harrah's To Issue New Secured Indebtedness.

Plaintiffs also allege that "[t]he Exchange Offers trigger a default under [] the indenture agreements because the New Notes subordinate the [Prior] Notes" and are "secured" without extending that security "equally and ratably" to the Prior Notes. (Compl. ¶¶ 70-72.) While plaintiffs are correct that the Prior Indentures contain covenants limiting Harrah's ability to incur new senior secured debt, plaintiffs ignore the express contractual exceptions that permit the exact type of senior secured debt issued in the Exchange Offer. An examination of each of the Prior Indentures demonstrates that plaintiffs fail to state a claim for breach.

#### 1. The exchange offer created permitted liens as Allowed by the Subordinated notes indentures.

The Subordinated Notes Indentures allow Harrah's to incur "Permitted Liens," including "Liens securing Senior Debt." (Def. Ex. A, §§ 10.77, 1.01; Def. Ex. C, §§ 10.77, 1.01.) "Senior Debt," in turn, is defined as "any other Debt, unless the instrument under which such Debt is incurred expressly provides that it is on a parity with or subordinated in right of payment to [the Subordinated Notes]." (Def. Ex. A, §§ 1.01, 10.07; Def. Ex. C, §§ 1.01, 10.07.)

Here, the New Notes are senior and secured. (Compl. at ¶ 49.) They are not on parity with nor subordinated to the Subordinated Notes. (Def. Ex. H, at 13.) The New Notes, therefore, qualify as Senior Debt and are secured by Permitted Liens under the express terms of the Subordinated Notes Indentures. (Def. Ex. A, §§ 1.01, 10.07; Def. Ex. C, §§ 1.01, 10.07.)

2. **The exchange offer issued new secured debt at least equal in seniority to the prior debt and as allowed by the senior notes indentures.**

The Senior Notes Indentures permit the Exchange Offer's secured New Debt in a number of ways. First, Section 4.7 of the Senior Notes Indentures allows Harrah's to issue certain secured debt so long as that debt in turn retires debt that is at least equal in seniority with the existing Senior Notes. (Pl. Ex. A, §§ 1.1, 4.7; Pl. Ex. B, §§ 1007, F of the officers' certificate; Def. Ex. B, §§ 1.1, 4.7; Def. Ex. D, §§ 1.1, 4.7; Def. Ex. E, §§ 1.1, 4.7; Def. Ex. F, §§ 1.1, 4.7.) The New Debt issued in connection with the Exchange Offer was used in part to retire the Senior Notes and Toggle Notes. As a consequence, that portion of the New Debt that was used to retire the existing Senior Notes and Toggle Notes was properly secured under Section 4.7 of the Senior Notes Indentures because the New Debt is "at least pari passu [equal in seniority] with the notes." (Pl. Ex. A, § 1.1; Pl. Ex. B, § F of the officers' certificate; Def. Ex. B, § 1.1; Def. Ex. D, § 1.1; Def. Ex. E, § 1.1; Def. Ex. F, § 1.1.)

The Senior Notes Indentures also allow Harrah's to issue other secured debt to retire the Senior Subordinated Notes. Although the Senior Subordinated Notes are not equal in seniority with the existing Senior Notes, a separate provision of the Senior Notes Indentures allows Harrah's to issue further debt (of whatever type – and whether secured or not) up to a certain prescribed limit.

Section 4.7 of the Senior Notes Indentures allows Harrah's to issue debt of whatever type "not including Indebtedness permitted" (*i.e.*, beyond the Indebtedness discussed

24

above that must at least be as senior as the Senior Notes or extend any lien to all debt equally). This second type of permitted secured debt is limited only such that it cannot "at any one time exceed 15% of Consolidated Net Tangible Assets of the Company." (Pl. Ex. A, § 4.7; Pl. Ex. B, § 1007; Def. Ex. B, § 4.7; Def. Ex. D, § 4.7; Def. Ex. E, § 4.7; Def. Ex. F, § 4.7.) Yet, that portion of the New Notes that retired the Senior Subordinated Notes is significantly less than 15% of the Company's Consolidated Net Tangible Assets, and thus is allowed to be secured under this second exception to the Senior Notes Indentures.

"Consolidated Net Tangible Assets" under the Senior Notes means "the total amount of assets," ($37,012.3 million), less current liabilities ($2,034.5 million) and goodwill ($9,315 million). (Pl. Ex. A, § 1.1; Pl. Ex. B § 101; Def. Ex. B, § 1.1; Def. Ex. D, § 1.1; Def. Ex. F, § 1.1; Def. Ex. E, § 1.1; Def. Ex. J, November 10, 2008 Form 10-Q, filed with the SEC, at 3.)[12] Harrah's Consolidated Net Tangible Assets for the purpose of this test, therefore, total $25,662.8 million and 15% of that number is $3,849.42 million. That amount -- $3,849.42 million -- is the amount of secured indebtedness permitted under this key exception to the Liens covenant of the Senior Notes Indenture. Yes, $3,849.42 million greatly exceeds the $23.8 million in Subordinated Notes that Harrah's exchanged for secured New Bonds (the rest being exchanged for cash).[13] Accordingly, the Senior Notes Indentures expressly allow the New Notes

---

[12]    This Court may consider the content of a company's public securities filings in connection with a motion to dismiss. *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

[13]    Harrah's other secured debt is excluded from the relevant calculation by the express terms of the Senior Notes Indentures, including:

       (1) A $7,213.8 million credit facility used to "refinance[e] existing senior debt." That credit facility is exempted by the retirement of Funded Debt exception to the Senior Notes Indentures. (Pl. Ex. A, § 4.7; Pl. Ex. B, § 1007; Def. Ex. B, § 4.7; Def. Ex. D, § 4.7; Def. Ex. F, § 4.7; Def. Ex. E, § 4.7; Def. Ex. K, (February 1, 2008 Form 8-K, filed with the SEC, at 1.)

to be secured in exchange for Senior Notes, the Toggle Notes, and the Senior Subordinated Notes.

### 3. The exchange offer resulted in new secured debt of less than $1.1 billion as allowed by the Toggle Notes Indenture.

The Toggle Notes Indenture permits the Exchange Offer to refinance the Prior Notes. Section 4.03(b)(xv) of the Toggle Notes Indenture allows for the "refund[ing], refinanc[ing] or defeas[ing]" of any existing indebtedness as long as the new, refinanced notes mature at least as far into the future as the prior notes they replace. (*Id*. at § 4.03(b)(xv)(1).)

As a preliminary matter, the Senior Notes and the Senior Subordinated Notes were both in existence at the time of the Toggle Notes Indenture. Second, the Complaint itself acknowledges that the New Notes have maturity dates at least as far into the future as the Prior Notes they replace. (Compl. ¶ 49 (alleging the Exchange Offer replaced "Notes due 2015 for previously-issued bonds maturing between 2010 and 2013," and "Notes due 2018 for previously-issued bonds maturing between 2015 and 2018.")). The Toggle Notes Indenture also expressly allows the "refinanc[ing]" of the Toggle Notes themselves. (Def. Ex. G, at § 4.03(b)(xv) (citing § 4.03(b)(ii)).) Additionally, the Toggle Notes Indenture expressly allows such refinancing indebtedness to be secured pursuant to a 4.5 to 1 "Secured Indebtedness Leverage Ratio" (met

---

(2) CMBS debt of $6,500 million, "secured by the assets of the CMBS properties." (Def. Ex. J, November 10, 2008 Form 10-Q, filed with the SEC, at 40, 42.) That CMBS debt is exempted by the Senior Notes Indentures because the CMBS properties are not assets of the "Company nor any of its Subsidiaries" (Harrah's Operating Company, Inc. or its subsidiaries). (Pl. Ex. A, § 4.7; Pl. Ex. B, § 1007; Def. Ex. B, § 4.7; Def. Ex. D, § 4.7; Def. Ex. F, § 4.7; Def. Ex. E, § 4.7.)

(3) Other secured debt totaling $290.4 million which, even if ineligible for any exception in the Liens covenants of the Senior Note Indentures, would still leave more than enough "headroom" in the $3,849.2 million Consolidated Tangible Assets exception for the incurrence of $23.8 million of New Notes to replace the Senior Subordinated Notes.

26

here). (*Id.* at §§ 4.12, 1.01; *see also* Def. Ex. J.).[14] As such, the secured New Notes are expressly permitted under the Toggle Notes Indentures.

The Senior Notes Indentures, the Senior Subordinated Notes Indentures, and the Toggle Notes Indenture each expressly permit Harrah's to issue secured New Debt as part of the Exchange Offer. Accordingly, plaintiffs' claims for breach fail and this Court should dismiss Count I for failure to state a claim upon which relief may be granted.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE HARRAH'S BOARD MEMBERS.

Plaintiffs' claim against the individual Harrah's directors is completely devoid of merit.

None of the individual Harrah's directors is a party to any of the relevant indentures. Further, Harrah's relationship with its bondholders is one of contract rather than one of fiduciary duty. *In re Hechinger Inv. Co. of Del.*, 274 B.R. at 89 (holding that bondholders have only contractual rights in the ordinary course); *Prod. Res. Group*, 863 A.2d at 787 (holding that bondholders are not owed any fiduciary duties). Finally, the relevant indentures expressly immunize any "past, present or future" Harrah's "director" from any associated claim. (Pl. Ex. A, § 10.8; Pl. Ex. B, § 1401; Def. Ex. A, § 1.13; Def. Ex. B, § 10.8; Def. Ex. C, § 1.13; Def. Ex. D, § 10.8; Def. Ex. E, § 10.8; Def. Ex. F, § 10.8; Def. Ex. G, § 13.10); *LaSalle Nat'l Bank v. Perelman*, 141 F. Supp. 2d 451, 459-62 (D. Del. 2001) (applying New York law) (holding that a

---

14    Even if the Secured Indebtedness Leverage Ratio were not met (it was), the Toggle Notes Indenture also includes additional provisions that permitted the secured New Notes of the Exchange Offer to refinance the Senior Notes, the Senior Subordinated Notes, and the Toggle Notes. Section 4.03(b)(xii) of the Toggle Notes Indenture includes a general basket allowance for the incurrence of additional debt of whatever type (secured or unsecured) up to $1,100.0 million. (Def. Ex. G, § 4.03(b)(xii).) Clause 6(D) of the definitions of Permitted Liens in the Toggle Notes Indenture expressly permits that debt be secured. Here, the entire Exchange Offer consisted of only $1,050.0 million in New Notes. (Def. Ex. I, Harrah's Dec. 22, 2008 press release.)

no recourse clause immunized officers and directors against all but plaintiff's fraud claims). As such, even if creditors were able to allege a director's duty under a bond indenture (which they are not), any such claim still would fail because of the contractual no-action provision against directors in the indentures. *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, No. 1081, 2006 WL 4762843, at *8 (Del. Ch. Mar. 28, 2006) (holding that claims against directors by bondholders are derivative in nature and are not available to creditors); *Lange v. Citibank, N.A.*, No. Civ. A. 19245, 2002 WL 2005728, at *7 (Del. Ch. Aug. 13, 2002) (holding that no action provisions are enforceable and prevent claims against directors). Accordingly, plaintiffs' claims against the Individual Defendants fail and this Court should dismiss Count V for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint in its entirety and with prejudice.

OF COUNSEL:

James E. Brandt
Joseph J. Frank
Charles J.G. Mazer
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, New York 10022
(212) 906-1200

Dated: February 23, 2009

*Kelly E. Farnan*
Gregory P. Williams (# 2168)
willians@rlf.com
Thomas Beck (# 2086)
beck@rlf.com
Kelly E. Farnan (# 4395)
Farnan@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendants Harrah's
Entertainment, Inc., Harrah's Operating Co., Inc.,
Charles L. Atwood, Jeffrey Benjamin, David
Bonderman, Anthony Civale, Jonathan Coslet,
Kelvin Davis, Jeanne P. Jackson, Gary W.
Loveman, Karl Peterson, Eric Press, Marc
Rowan, Lynn C. Swann, and Christopher J.
Williams

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2009, I caused to be served by electronic mail and hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

**VIA ELECTRONIC MAIL AND HAND DELIVERY**
Joseph A. Rosenthal
P. Bradford deLeeuw
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 North Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

I hereby certify that on February 23, 2009, the foregoing document was sent to the following non-registered participants in the manner indicated:

**VIA ELECTRONIC MAIL**
Paul J. Geller
Jonathan M. Stein
Stuart A. Davidson
Cullin A. O'Brien
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432

Samuel H. Rudman
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747

S. Gene Cauley
CAULEY LAW FIRM, PLLC
P.O. Box 25438
Little Rock, AR 72221

Kelly E. Farnan (#4395)
farnan@rlf.com