IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| S. BLAKE MURCHISON, and WILLIS SHAW, <br><br> Plaintiffs, <br><br> vs. <br><br> HARRAH'S ENTERTAINMENT, INC., HARRAH'S OPERATING COMPANY, INC., CHARLES L. ATWOOD, JEFFREY BENJAMIN, DAVID BONDERMAN, ANTHONY CIVALE, JONATHAN COSLET, KELVIN DAVIS, JEANNE P. JACKSON, GARY W. LOVEMAN, KARL PETERSON, ERIC PRESS, MARC ROWAN, LYNN C. SWANN, and CHRISTOPHER J. WILLIAMS, <br><br> Defendants. | C.A. No 1:09-cv-00020-SLR |

**DECLARATION OF M. TRAVIS KEATH, CFA, CPA/ABV OF VALUE INCORPORATED IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND LIMITED DISCOVERY**

I, M. Travis Keath, CFA, CPA/ABV of VALUE Incorporated, hereby declare that:

1. I am over the age of 18, of sound mind and fully competent to testify about the matters contained in this Declaration. I hold the Chartered Financial Analyst designation, am a Certified Public Accountant licensed in the state of Texas and hold the Accredited in Business Valuation designation conferred by the American Institute of Certified Public Accountants. I am a financial analyst by profession, specializing in matters pertaining to business and securities valuation and capital markets. A copy of my resumé, which outlines my professional experience and expertise, appears in Attachment A to this Declaration. I have been qualified or accepted as an expert on the operations of the securities markets, damages, investment banking practices, financial

valuation and related corporate finance matters in numerous federal and state courts nationwide since 1996. I have provided many depositions and submitted numerous declarations and affidavits on matters in these subject areas as well. My opinions have never been excluded from any case on the basis of a challenge to my qualifications as an expert.

2. I have been retained by plaintiffs' counsel to render independent financial advice and assistance in connection with the Action, and to provide expert testimony, as needed, relevant to valuation issues pertinent in the litigation.

3. From the end of the second quarter of 2008 through November 14 of that year, amidst a period of tremendous stress in the capital markets, publicly traded debt instruments[1] (collectively, "Harrah's Notes") issued by Harrah's Entertainment, Inc. ("HEI") and Harrah's Operating Company, Inc. ("HOC") (collectively "Harrah's") suffered material declines in trading prices, as shown in Figure 1.

---

[1] The publicly traded debt instruments that VALUE Incorporated analyzed refer to certain issues referenced in the First Exchange Offer. From the time period referenced above, 9 of the 10 instruments had observable publicly traded prices. The 10.75% Senior Notes due 2016 did not have pricing information according to Bloomberg LP through November 14, 2008.

**Figure 1**



4.  In an effort to reduce the principal amount and extend the average maturity of its debt, Harrah's announced a major debt exchange offer (the "First Exchange Offer") on November 14, 2008. I understand that the First Exchange Offer was limited to "qualified institutional buyers and to certain non-U.S. investors located outside the United States" ("QIBs"), and that certain accredited investors and retail holders were not allowed to participate.

5.  I understand that in response to the allegedly discriminatory elements of the First Exchange Offer, Plaintiffs filed a class action lawsuit on January 9, 2009 on behalf of all bondholders ineligible to participate in the First Exchange Offer, alleging that the First Exchange Offer unfairly discriminated against them.

6.  On December 22, 2009, Harrah's announced the completion and results of the First Exchange Offer, which resulted in $2.2 billion in tendered principal (of $10.8 billion outstanding) being accepted for exchange by Harrah's.

3

7. Between December 22, 2008 and March 4, 2009, Harrah's Notes traded generally flat, with perhaps a modest downward bias, as shown in Figure 2[2] below:

**Figure 2**



8. I understand that on March 4, 2009, Plaintiffs filed an amended complaint (the "Amended Complaint") to include claims on behalf of QIBs that held bonds that were exchanged in the First Exchange Offer.

9. I understand that on March 4, 2009, after the Amended Complaint was filed, Harrah's announced a second major debt exchange offer (the "Second Exchange Offer"). Like the First Exchange Offer, the Second Exchange Offer was intended to further reduce the principal amount and

---

[2] Figure 2 includes the Harrah's Notes identified in Figure 1. Subsequent to the First Exchange Offer, the 10.75% Senior Notes due 2016 traded under Cusips U24658AJ2 and 413627BE9. Figure 2 also includes pricing graphs for the New 10.0% 2015 and 2018 2nd Lien Notes created to facilitate the First Exchange Offer.

extend the average maturity of Harrah's debt. A noteworthy difference between the First Exchange Offer and the Second Exchange Offer was that the latter included non-QIB investors.

10.     The market welcomed news of the Second Exchange Offer, as evidenced by an immediate and material increase in the market values of most of the Harrah's Notes following the announcement of the Second Exchange Offer.

11.     Trading prices for Harrah's Notes began to rise following the announcement of the Second Exchange Offer, and continued to rise even after the Second Exchange Offer was completed on April 9, 2009, as shown in Figure 3 below.

**Figure 3**



12.     Another perspective from which to view the beneficial nature of the Second Exchange Offer is to compare reported prices of Harrah's Notes to those of its peer group (including Boyd Gaming, Las Vegas Sands, MGM Mirage and Wynn Resorts). Figure 4 shows an example of

5

market prices for Harrah's 5.625% notes due 2015 to peer securities of similar maturity. The vertical black line indicates the date on which the Second Exchange Offer was announced.[3]

**Figure 4**



13. Although the peer notes tended to move in a similar direction to Harrah's Notes, the magnitude of the change was much more pronounced for Harrah's than for its peers. Figure 5 places the price movements on a relative scale indexed to 100, and shows that: (a) the decline in Harrah's Notes was sharper than for its peers before the Second Exchange Offer was announced, and (b) the recovery in Harrah's Notes was much more rapid and sustained following the announcement.

---

[3] Although only the 5.625% 2015 notes are shown in Figure 4, we observed similar patterns for Harrah's other notes.

**Figure 5**



14.     I attempted to quantify the increase in value of the Harrah's Notes resulting from the Second Exchange Offer by examining the change in value of (a) the old securities based on prices as of March 4, 2009 (the trading session immediately preceding the Second Exchange Offer) compared to (b) the new securities ultimately received by investors based on prices as of March 5, 2009 (the trading session immediately following the Second Exchange Offer).

15.     Schedule A.1 shows the results of the Second Exchange Offer in terms of the principal amount of original notes tendered and accepted as well as the principal amount of new notes issued as consideration for the tendered notes. It should be noted that this analysis was prepared without access to the final Offering Memorandum and Consent Solicitation Statement

7

governing the Second Exchange Offer, as well as subsequently issued supplements, which are non-public documents.[4]

16. Schedules B.1, B.2 and B.3 display the detailed calculations of the aggregate one-day difference in fair market value of the notes tendered to Harrah's by the plaintiff class and the notes ultimately received from Harrah's by the plaintiff class as consideration following the announcement of the Second Exchange Offer prior to the opening of the markets on March 5, 2009. The detailed pricing on an issue-by-issue basis appears in Schedule C.1.

17. As shown in Schedule B.1, original notes with an aggregate principal amount of $5.004 billion were tendered by holders and accepted by Harrah's for exchange into new notes. The aggregate fair market value of these tendered notes was $609.6 million. The new notes ultimately issued by Harrah's in exchange for the tendered original notes had an aggregate principal amount of $3.352 billion and an aggregate fair market value of $956.7 million. The difference in value between the original notes tendered and the new notes received as consideration was $347.1 million.

18. As shown in Schedule B.2, original notes with an aggregate principal amount of $522.9 million were tendered to Harrah's BC, Inc. ("HBC," a wholly owned subsidiary of HEI) by QIBs and accredited investors for cash consideration of $185 per $1,000 principal amount. The aggregate fair market value of the notes tendered in the HBC cash tender offer was $30.7 million, and the aggregate cash consideration for these notes was $96.7 million. The difference in value between the original notes tendered and the cash received as consideration was $66.0 million.

---

[4] I was, however, given access to a draft of an Offer to Purchase and Consent Solicitation Statement, dated February 27, 2009. I relied on this and various public sources detailed in the footnotes to Schedule A.1 to arrive at my assumptions regarding the terms of exchange. Should any of these assumptions be in error, I am prepared to correct them upon receipt of the appropriate documents.

19. As shown in Schedule B.3, original notes with an aggregate principal amount of $24.0 million were tendered to Harrah's by retail holders who were not QIBs or accredited investors for cash consideration of either $370 per $1,000 principal amount for issues maturing in 2010 and 2011, or $185 per $1,000 principal amount for issues maturing thereafter. The aggregate fair market value of the notes tendered in the retail tender offer was $2.0 million, and the aggregate cash consideration for these notes was $4.8 million. The difference in value between the original notes tendered and the cash received as consideration was $2.8 million.

20. Based on the foregoing, it is my opinion that the Second Exchange Offer created material value for the plaintiff class, and that such value is estimated as follows:

**Figure 5: Summary of Value Created by the Second Exchange Offer**
($ in millions)

|  | Value Tendered | Value Received | Increase in Value |
|---|---|---|---|
| Note Exchange | $ 609.613 | $ 956.739 | $ 347.126 |
| HBC Cash Tender | 30.734 | 96.744 | 66.010 |
| Retail Cash Tender | 2.021 | 4.790 | 2.769 |
| **Total** | **$ 642.368** | **$ 1,058.273** | **$ 415.905** |

21. As discussed above, the newly issued notes ultimately received by the plaintiff class rose steadily and significantly in value during the days and weeks following the announcement of the Second Exchange Offer.

22. I am aware of no publicly available information that allows me to distinguish participation by QIBs from participation by accredited investors in either the note exchange or the HBC cash tender.

23. My work in this matter is ongoing. I reserve the right to modify my analysis and conclusions based on the receipt of additional information.

I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. § 1746, that the foregoing is true and correct.


Executed this 23rd day of July, 2009, at Irving, Texas.

                                                                       M. Travis Keath

## SCHEDULE A.1
## EXCHANGE OFFER 2
## RESULTS OF EXCHANGE OFFER 2

*In $ Thousands*

### Old Notes

| VALUE Inc. Reference | Coupon | Maturity | Cusip | Acceptance Priority | Principal Tendered for Exchange (1) | Principal Tendered: HBC Tender Offers (1) | Principal Tendered: Retail Cash Offers (1) | Total Principal Tendered | Total Principal Accepted (1) | % Accepted | Principal Amount Outstanding (1) | Remaining Principal Outstanding (1) | % of Principal | 10.0% 2nd Lien Notes Exchanged | Exchange Ratio (2) | Amount Exchanged |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E | 5.500% | 2010 | 413627AQ3 | 1 | $ 85,576 | $ - | $ 1,225 | $ 86,801 | $ 86,801 | 100.0% | $ 346,000 | $ 259,199 | 25.1% | 2015 Notes | 1.00 | $ 85,576 |
| B | 7.875% | 2010 | 700690AQ3 | 1 | 44,003 | - | 188 | 44,191 | 44,191 | 100.0% | 299,000 | 254,809 | 14.8% | 2015 Notes | 1.00 | 44,003 |
| C | 8.000% | 2011 | 413627AH3 | 1 | 1,354 | - | 87 | 1,441 | 1,441 | 100.0% | 52,000 | 50,559 | 2.8% | 2015 Notes | 0.80 | 1,083 |
| A | 8.125% | 2011 | 700690AL4 700690AK6 | 1 | 46,642 | - | 444 | 47,086 | 47,086 | 100.0% | 234,000 | 186,914 | 20.1% | 2015 Notes | 0.80 | 37,314 |
| D | 5.375% | 2013 | 413627AN0 | 1 | 65,689 | | 544 | 66,233 | 66,233 | 100.0% | 279,000 | 212,767 | 23.7% | 2015 Notes | 0.50 | 32,845 |
| F | 5.625% | 2015 | 413627AU4 | 2 | 57,317 | 201,922 | 14,890 | 274,129 | 274,129 | 100.0% | 864,000 | 791,793 | 31.7% | 2018 Notes | 0.50 | 28,659 |
| H | 6.500% | 2016 | 413627AX8 | 2 | 74,496 | 189,118 | 3,559 | 267,173 | 267,173 | 100.0% | 651,000 | 572,945 | 41.0% | 2018 Notes | 0.50 | 37,248 |
| G | 5.750% | 2017 | 413627AW0 | 2 | 68,884 | 131,902 | 2,163 | 202,949 | 202,949 | 100.0% | 610,000 | 538,953 | 33.3% | 2018 Notes | 0.50 | 34,442 |
| M | 10.750% | 2018 | 413627BF6 | 3 | 1,104,203 | - | - | 1,104,203 | 1,104,203 | 100.0% | 1,113,000 | 8,797 | 99.2% | 2018 Notes | 0.57 | 632,156 |
| N | 10.750% | 2016 | 413627AY6 413627BE9 U24658AJ2 | 4 | 3,455,721 | - | 850 | 3,456,571 | 3,456,571 | 100.0% | 4,200,000 | 743,429 | 82.3% | 2018 Notes | 0.70 | 2,419,005 |
| **Total Notes** | | | | | $ 5,003,885 | $ 522,942 | $ 23,950 | $ 5,550,777 | $ 5,550,777 | | $ 8,648,000 | $ 3,620,165 | | | | $ 3,352,330 |

### Bridge Loans

| VALUE Inc. Reference | Coupon | Maturity | | | Tendered for Exchange (1) | Principal Tendered: HBC Tender Offers (1) | Principal Tendered: Retail Cash Offers (1) | Total Principal Tendered | Total Principal Accepted (1) | % Accepted | Principal Amount Outstanding (1) | Remaining Principal Outstanding (1) | % of Principal | 10.0% 2nd Lien Notes Exchanged | Exchange Ratio (2) | Amount Exchanged |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bridge M | 10.750% | 2018 | | | $ 99,673 | $ - | $ - | $ 99,673 | 99,673 | 100.0% | $ 99,673 | $ - | 100.0% | | 0.67 | 66,975 |
| Bridge N | 10.750% | 2016 | | | 342,582 | - | - | 342,582 | 342,582 | 100.0% | 342,582 | - | 100.0% | | 0.67 | 230,197 |
| **Total Bridge Loans** | | | | | $ 442,256 | $ - | $ - | $ 442,256 | $ 442,256 | | $ 442,256 | $ - | | | | $ 297,172 |
| **Combined Total** | | | | | $ 5,446,141 | $ 522,942 | $ 23,950 | $ 5,993,033 | $ 5,993,033 | | $ 9,090,256 | $ 3,620,165 | | | | $ 3,649,502 |

**References**

(1) Harrah's Entertainment, Inc. press release dated 4/9/2009

(2) Exchange Ratio Sources:

Draft of Confidential Offering Memorandum and Consent Solicitations dated 2/27/2009 (used for maturities ending 2010-2011 and Priority 3 and 4 Notes)

Harrah's Entertainment, Inc. Form 8-K Filed 3/26/2009; Item 8.01 (used for maturities ending 2013 and Priority 2 Notes)

Harrah's Entertainment, Inc. Form 8-K Filed 4/9/2009; Item 8.01 (implied .67 ratio used for Bridge Loans based on $297 million reference)

Harrah's Entertainment, Inc. press releases dated March 17, 19, 26, and April 9, 2009

## SCHEDULE B.1
## EXCHANGE OFFER 2
## NOTES EXCHANGED

*In $ Thousands*

**Old Notes**

| VALUE Inc. Reference | Coupon | Maturity | Cusip | Acceptance Priority | Principal Accepted for Exchange [1] | Fair Market Value 3/4/2009 [2] | Fair Market Value of Notes Tendered 3/4/2009 | 10.0% 2nd Lien Notes Exchanged | Principal Value of New 2nd Lien Notes [3] | Fair Market Value 3/5/2009 [2] | Fair Market Value of 2nd Lien Notes 3/5/2009 | Change in Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E | 5.500% | 2010 | 413627AQ3 | 1 | $ 85,576 | 0.3117 | $ 26,674 | 2015 Notes | $ 85,576 | 0.2838 | $ 24,282 | $ (2,392) |
| B | 7.875% | 2010 | 700690AQ3 | 1 | 44,003 | 0.3200 | 14,081 | 2015 Notes | 44,003 | 0.2838 | 12,486 | (1,595) |
| C | 8.000% | 2011 | 413627AH3 | 1 | 1,354 | 0.2169 | 294 | 2015 Notes | 1,083 | 0.2838 | 307 | 14 |
| A | 8.125% | 2011 | 700690AL4 700690AK6 | 1 | 46,642 | 0.1784 | 8,321 | 2015 Notes | 37,314 | 0.2838 | 10,588 | 2,267 |
| D | 5.375% | 2013 | 413627AN0 | 1 | 65,689 | 0.0905 | 5,945 | 2015 Notes | 32,845 | 0.2838 | 9,320 | 3,375 |
| F | 5.625% | 2015 | 413627AU4 | 2 | 57,317 | 0.0679 | 3,890 | 2018 Notes | 28,659 | 0.2855 | 8,182 | 4,292 |
| H | 6.500% | 2016 | 413627AX8 | 2 | 74,496 | 0.0452 | 3,367 | 2018 Notes | 37,248 | 0.2855 | 10,634 | 7,267 |
| G | 5.750% | 2017 | 413627AW0 | 2 | 68,884 | 0.0643 | 4,429 | 2018 Notes | 34,442 | 0.2855 | 9,833 | 5,404 |
| M | 10.750% | 2018 | 413627BF6 | 3 | 1,104,203 | 0.0435 | 47,995 | 2018 Notes | 632,156 | 0.2855 | 180,481 | 132,486 |
| N | 10.750% | 2016 | 413627AY6 413627BE9 U24658AJ2 | 4 | 3,455,721 | 0.1431 | 494,617 | 2018 Notes | 2,419,005 | 0.2855 | 690,626 | 196,008 |
| **Total** | | | | | $ 5,003,885 | | $ 609,613 | | $ 3,352,330 | | $ 956,739 | $ 347,126 |

**References**

(1) Harrah's Entertainment, Inc. press release dated 4/9/2009

(2) Sources: Bloomberg LP and VALUE Inc. (prices presented per $1.00 of face value)

(3) See Schedule A.1, "Amount Exchanged"

## SCHEDULE B.2
## EXCHANGE OFFER 2
## HBC TENDER OFFERS

*In $ Thousands*

**Old Notes**

| VALUE Inc. Reference | Coupon | Maturity | Cusip | Acceptance Priority | Principal Accepted: HBC Tender Offers (1) | Fair Market Value 3/4/2009 (2) | Fair Market Value of Notes Tendered 3/4/2009 | Exchanged For | Exchange Ratio (3) | Cash Received in Exchange Offer | Change in Value |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E | 5.500% | 2010 | 413627AQ3 | 1 | $ - | 0.3117 | $ - | | | - | $ - |
| B | 7.875% | 2010 | 700690AQ3 | 1 | - | 0.3200 | - | | | - | - |
| C | 8.000% | 2011 | 413627AH3 | 1 | - | 0.2169 | - | | | - | - |
| A | 8.125% | 2011 | 700690AL4 | 1 | - | 0.1784 | - | | | - | - |
| | | | 700690AK6 | | | | | | | | |
| D | 5.375% | 2013 | 413627AN0 | 1 | - | 0.0905 | - | | | - | - |
| F | 5.625% | 2015 | 413627AU4 | 2 | 201,922 | 0.0679 | 13,704 | Cash | 0.1850 | 37,356 | 23,651 |
| H | 6.500% | 2016 | 413627AX8 | 2 | 189,118 | 0.0452 | 8,548 | Cash | 0.1850 | 34,987 | 26,439 |
| G | 5.750% | 2017 | 413627AW0 | 2 | 131,902 | 0.0643 | 8,481 | Cash | 0.1850 | 24,402 | 15,921 |
| M | 10.750% | 2018 | 413627BF6 | 3 | - | 0.0435 | - | | | - | - |
| N | 10.750% | 2016 | 413627AY6 | 4 | - | 0.1431 | - | | | - | - |
| | | | 413627BE9 | | | | | | | | |
| | | | U24658AJ2 | | | | | | | | |
| **Total** | | | | | $ 522,942 | | $ 30,734 | | | $ 96,744 | $ 66,010 |

**References**

(1) Harrah's Entertainment, Inc. press release dated 4/9/2009

(2) Sources: Bloomberg LP and VALUE Inc. (prices presented per $1.00 of face value)

(3) Exchange Ratio Sources:

    Harrah's Entertainment, Inc. Form 8-K Filed 3/26/2009; Item 8.01

    Harrah's Entertainment, Inc. press releases dated March 26, and April 9, 2009

# SCHEDULE B.3
# EXCHANGE OFFER 2
# RETAIL CASH TENDER OFFERS

*In $ Thousands*

**Old Notes**

| VALUE Inc. Reference | Coupon | Maturity | Cusip | Acceptance Priority | Principal Accepted for Retail Cash Tender Offers [1] | Fair Market Value 3/4/2009 [2] | Fair Market Value of Notes Tendered 3/4/2009 | Exchanged For | Exchange Ratio [3] | Cash Received in Exchange Offer | Change in Value |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E | 5.500% | 2010 | 413627AQ3 | 1 | $ 1,225 | 0.3117 | $ 382 | Cash | 0.3700 | $ 453 | $ 71 |
| B | 7.875% | 2010 | 700690AQ3 | 1 | 188 | 0.3200 | 60 | Cash | 0.3700 | 70 | 9 |
| C | 8.000% | 2011 | 413627AH3 | 1 | 87 | 0.2169 | 19 | Cash | 0.3700 | 32 | 13 |
| A | 8.125% | 2011 | 700690AL4 | 1 | 444 | 0.1784 | 79 | Cash | 0.3700 | 164 | 85 |
|   |        |      | 700690AK6 |   |     |        |    |      |        |     |    |
| D | 5.375% | 2013 | 413627AN0 | 1 | 544 | 0.0905 | 49 | Cash | 0.1850 | 101 | 51 |
| F | 5.625% | 2015 | 413627AU4 | 2 | 14,890 | 0.0679 | 1,011 | Cash | 0.1850 | 2,755 | 1,744 |
| H | 6.500% | 2016 | 413627AX8 | 2 | 3,559 | 0.0452 | 161 | Cash | 0.1850 | 658 | 498 |
| G | 5.750% | 2017 | 413627AW0 | 2 | 2,163 | 0.0643 | 139 | Cash | 0.1850 | 400 | 261 |
| M | 10.750% | 2018 | 413627BF6 | 3 | - | 0.0435 | - |  |  | - | - |
| N | 10.750% | 2016 | 413627AY6 | 4 | 850 | 0.1431 | 122 | Cash | 0.1850 | 157 | 36 |
|   |         |      | 413627BE9 |   |     |        |     |      |        |     |    |
|   |         |      | U24658AJ2 |   |     |        |     |      |        |     |    |
| **Total** |  |  |  |  | $ 23,950 |  | $ 2,021 |  |  | $ 4,790 | $ 2,769 |

**References**

(1) Harrah's Entertainment, Inc. press release dated 4/9/2009

(2) Sources: Bloomberg LP and VALUE Inc. (prices presented per $1.00 of face value)

(3) Exchange Ratio Sources:

Old Notes with maturities from 2010-2011 exchanged at ratio of $0.37 per $1.00 based on Bloomberg LP Article dated March 13, 2009: *Harrah's Owners Said to Hedge Against Bankruptcy;* Jonathan Keehner, Caroline Salas, Jason Kelly

Harrah's Entertainment, Inc. Form 8-K Filed 3/26/2009; Item 8.01 indicates that 5.375% 2013 Notes and Priority 2 Notes exchanged at ratio of $0.185 per $1.00

Harrah's Entertainment, Inc. press releases dated March 26, and April 9, 2009

**SCHEDULE C.1**
**EXCHANGE OFFER 2**
**FAIR MARKET VALUE CALCULATIONS**

| VALUE Inc. Reference | Coupon | Maturity | Cusip | Acceptance Priority | Fair Market Value 3/4/2009 (Per $1 Face Value) | | Fair Market Value 3/5/2009 (Per $1 Face Value) | |
|---|---|---|---|---|---|---|---|---|
| **Old Notes** | | | | | | | | |
| E | 5.500% | 2010 | 413627AQ3 | 1 | 0.3117 | (2) | 0.3177 | (7) |
| B | 7.875% | 2010 | 700690AQ3 | 1 | 0.3200 | (3) | 0.3200 | (9) |
| C | 8.000% | 2011 | 413627AH3 | 1 | 0.2169 | (2) | 0.2452 | (6) |
| A | 8.125% | 2011 | 700690AL4 | 1 | 0.1784 | (2) | 0.2300 | (1) |
| | | | 700690AK6 | | | | | |
| D | 5.375% | 2013 | 413627AN0 | 1 | 0.0905 | (7) | 0.1110 | (7) |
| F | 5.625% | 2015 | 413627AU4 | 2 | 0.0679 | (3) | 0.0790 | (7) |
| H | 6.500% | 2016 | 413627AX8 | 2 | 0.0452 | (1) | 0.0833 | (7) |
| G | 5.750% | 2017 | 413627AW0 | 2 | 0.0643 | (4) | 0.0777 | (7) |
| M | 10.750% | 2018 | 413627BF6 | 3 | 0.0435 | (5) | 0.0685 | (5) |
| N | 10.750% | 2016 | 413627BE9 | 4 | 0.1431 | (1) | 0.1449 | (7) |
| | | | 413627AY6 | | | | | |
| **New 2nd Lien Notes** | | | | | | | | |
| O | 10.000% | 2015 | 413627BA7 | | 0.2825 | (1) | 0.2838 | (1) |
| P | 10.000% | 2018 | 413627BC3 | | 0.2917 | (1) | 0.2855 | (8) |

**References**

(1) Bloomberg LP closing price
(2) Issue did not trade on 3/4/3009: Based on previous 20-trading day average relationship to 5.375% 2013 Issue
(3) Issue did not trade on 3/4/2009: Price selected was closing on 3/3/2009
(4) Issue did not trade on 3/4/2009: Based on previous 20-trading day average relationship to 6.5% 2016 Issue, 10.75% 2016 Issue, and 10.0% 2018 Issue
(5) Issue did not trade on 3/4 or 3/5/2009: Based on average relationship to 6.5% 2016 Issue from 11/17/2008 through 12/31/2008
(6) Issue did not trade on 3/5/2009: Based on previous 20-trading day average relationship to 8.125% 2011 Issue, 5.375% 2013 Issue, and 5.5% 2010 Issue
(7) Daily volume weighted-average price ("VWAP")
(8) Issue did not trade on 3/5/2009: Based on previous 20-trading day average relationship to 10.0% 2015 Issue
(9) Issue did not trade on 3/5/2009: Based on 3/6/2009 closing price